Cite as 2025 Ark. App. 125

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CV-23-589

| | |
|---|---|
| THOMAS HAWKINS, AS EXECUTOR OF THE ESTATE OF JOYCE HAWKINS, DECEASED<br><br>APPELLANT | Opinion Delivered February 26, 2025<br><br>APPEAL FROM THE MARION COUNTY CIRCUIT COURT [NO. 45CV-20-73] |
| V. | |
| COLIN GRIFFIN, LAURA GRIFFIN FRY, CHRISTINA GRIFFIN TAYLOR, AND MURRAY GRIFFIN<br><br>APPELLEES | HONORABLE JOHNNIE A. COPELAND, JUDGE<br><br>DISMISSED WITHOUT PREJUDICE |

**CINDY GRACE THYER, Judge**

Thomas "Kirk" Hawkins, as executor of the estate of Joyce Hawkins, deceased, appeals a Marion County Circuit Court order dismissing his breach-of-contract and unjust-enrichment claims against his stepsiblings, Colin Griffin, Laura Griffin Fry, Christina Griffin Taylor, and Murray Griffin (collectively, "appellees"). Because we lack a final, appealable order, we dismiss the appeal without prejudice on jurisdictional grounds.

Clyde William Griffin and Joyce Lynn Griffin were married for over thirty years and are the parents of the parties. Kirk is Joyce's son; the other four children are Clyde's children.

In 2018, Clyde and Joyce were living together in South Carolina. In June of that year, Clyde, age eighty-four, began having health issues that required full-time professional care. It was agreed that Clyde would move to Arkansas so that his son, Colin, could care for him.

To facilitate this, Clyde and Joyce advanced Colin $140,000 to purchase a home in Arkansas with a verbal agreement that Colin would care for Clyde. The parties intended for Joyce to move to Arkansas as well during Clyde's recovery. Clyde moved to Arkansas in July of that year.

Joyce, however, did not move to Arkansas. Kirk claims that the appellees informed Joyce that she was no longer welcome to live with Clyde in the house in Arkansas. Appellees claim that Joyce had a serious drinking problem and that Joyce's move to Arkansas was conditioned on her obtaining and maintaining sobriety.

In December 2018, Clyde filed for divorce. In May 2019, in anticipation of their divorce, Clyde and Joyce entered into a property settlement agreement. Under the agreement, Joyce was to receive their South Carolina home and a car, monthly alimony, the balance of four bank accounts, and 50 percent of Clyde's life insurance proceeds upon his death. Joyce was to pay Clyde $96,407.32 in full settlement of the accounts, real estate, and household furnishings. Joyce paid Clyde the money due under the settlement agreement on June 4, 2019, and Clyde made the first alimony payment.

On June 13, 2019, the court orally granted the parties a divorce from bed and board. However, June passed away the following day before the divorce decree, which incorporated the property settlement agreement, was entered of record.[1]

---

[1]Because Joyce passed before the divorce decree was entered, an order voiding the decree was entered on September 25, 2019.

On June 18, while driving Clyde to South Carolina after Joyce's death, Colin allegedly told Kirk that the divorce (and, by implication, the property settlement agreement) might be overturned because Joyce had died before the decree had been entered. Laura, on the other hand, allegedly texted Kirk that she did not agree with Colin and believed the property settlement agreement should be honored. Clyde allegedly verbally agreed to honor the property settlement agreement and signed a quitclaim deed transferring the South Carolina house to Kirk.

Clyde died in December 2019 before the terms of the property settlement agreement were fully executed. At least two terms of the agreement were outstanding at the time of his death: the insurance proceeds and the four bank accounts. Evidently, sometime after Joyce's death, Clyde had removed Joyce as a beneficiary of his life insurance policy, naming only Laura, Christina, and Murray as beneficiaries. Additionally, it appears he had never transferred the four bank accounts into Joyce's or her estate's name.

In August 2020, Kirk, as executor of Joyce's estate, filed suit against appellees for breach of contract and unjust enrichment. He claimed that appellees, as Clyde's heirs, had breached the property settlement agreement and that their intentional failure to abide by the agreement had resulted in their unjust enrichment in the amount contemplated by the property settlement agreement. More specifically, Kirk sought to enforce the portions of the property settlement agreement related to the life insurance proceeds and the four bank accounts.

In September 2020, appellees moved to dismiss the complaint. They argued first that the court lacked personal jurisdiction over Laura, Christina, and Murray, who lived in Washington, Missouri, and Michigan, respectively. Appellees also argued that the complaint should be dismissed against all four appellees for failure to state facts upon which relief could be granted. More specifically, they argued that the breach-of-contract action should fail because the property settlement agreement was a contract between Clyde and Joyce, and as nonparties, there was a lack of privity between them and the estate. As to the unjust-enrichment claim, they first alleged that, because Colin was not a beneficiary of the life insurance policy and did not receive any of the proceeds from it, a claim for unjust enrichment could not be brought against him. They further argued that there was no confidential relationship between the parties and that the complaint had not alleged that they had committed any act, much less a fraudulent one.

The court entered an order dismissing the breach-of-contract claim against all the appellees for lack of privity of contract between any of the appellees and Joyce or the estate. The court also dismissed the unjust-enrichment claim against Christina, Laura, and Murray for lack of personal jurisdiction and failure to state a claim under Arkansas Rule of Civil Procedure 12(b)(6). The court, however, allowed the cause of action for unjust enrichment to go forward against Colin. In so doing, the court noted that it was feasible that Colin could have changed the beneficiaries of the life insurance policy as alleged in the complaint. The order made no mention of the unjust-enrichment claim as to the bank accounts.

4

In December 2022, Colin moved for summary judgment. In his motion, Colin asserted that the estate's claim for unjust enrichment must fail because he did not receive any of the proceeds from the life insurance policy and claimed that the estate lacked standing to bring the action because Joyce had predeceased Clyde. The bank accounts were not mentioned in the motion or the brief in support.

The estate responded, asserting that it had standing to bring the action and claiming, once again, that the estate was entitled to one-half of the proceeds from Clyde's life insurance policy.

A hearing was held on the motion for summary judgment on January 19, 2023. The sole focus of the hearing was the validity of the estate's claim with respect to the life insurance policy.

The circuit court ultimately granted Colin's motion for summary judgment. The order entered by the court focused solely on the facts surrounding the change in beneficiaries of the life insurance policy. It then dismissed the "complaint" pursuant to Arkansas Rule of Civil Procedure 56 on the grounds that Colin had not received any of the life insurance proceeds from Clyde and was, therefore, not unjustly enriched. Again, the court's order made no mention of the estate's unjust-enrichment claim as it related to the four bank accounts identified in the property settlement agreement.

The estate has now appealed. In its notice of appeal, the estate does not, as required by our rules, abandon any pending yet unresolved claims.[2]

Before we can address the merits of this appeal, we must first address the finality of the circuit court's decision. While no party has raised the issue, whether an order is final for appeal purposes is a jurisdictional point that we must raise on our own. Rule 2(a)(1) of the Arkansas Rules of Appellate Procedure–Civil states that an appeal may—absent some exceptions that do not apply—be taken from a final judgment or decree. A final order is one that dismisses the parties, discharges them from the action, *or concludes their rights to the subject matter in controversy. See Covenant Presbytery v. First Baptist Church*, 2014 Ark. App. 301; *Davis v. Brown*, 2011 Ark. App. 789. Absent a final order or a properly executed certificate from the circuit court making an "express determination, supported by specific factual findings, that there is no just reason for delay"—which we do not have—an order that fails to adjudicate all of the parties' claims cannot be appealed. Ark. R. Civ. P. 54(b).

The circuit court's order granting summary judgment in this case is not a final one because it does not adjudicate all the estate's claims for unjust enrichment. The complaint sought to enforce the property settlement agreement's provisions regarding the life insurance proceeds and the four bank accounts. It further claimed that, by failing to comply with the

---

[2]Our rules require that the notice of appeal shall state that the appealing party abandons any pending but unresolved claims unless the notice is filed in certain interlocutory situations not applicable here. Ark. R. App. P.–Civ. 3(iv). The reason for the rule is to prevent finality issues resulting from stray claims. *See id.* reporter's note.

6

agreement, the parties were unjustly enriched "by the amount contemplated in the agreement." This would include the amounts contained in those four bank accounts. However, the summary-judgment order here addresses only the estate's unjust-enrichment claim as to the life insurance proceeds.[3] While it dismisses the complaint, it does not address the estate's unjust-enrichment claims regarding the four bank accounts. This oversight is even mentioned in appellant's brief at page 34. As such, the order granting summary judgment has not fully concluded the parties' rights to the subject matter in controversy. This oversight is an entrenched jurisdictional defect that we cannot overlook. *Covenant Presbytery*, *supra*; *Stephens v. Bredemeyer*, 2011 Ark. App. 727. Therefore, we must dismiss this appeal without prejudice.

Dismissed without prejudice.

ABRAMSON and GLADWIN, JJ., agree.

*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Jeremy B. Lowrey*; and *Grayson & Grayson, P.A.*, by: *Keith L. Grayson*, for appellees.

---

[3]The order states, "Plaintiff's Complaint is hereby dismissed pursuant to A.R.C.P. 56 on the grounds that the Defendant, Colin Griffin, *did not receive any of the life insurance proceeds from Clyde Griffin*, and was therefore not unjustly enriched." (Emphasis added.)